IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA


DORAN CHRISTIAN CARVALHO,           :
                                    :
          Plaintiff                 :
                                    :
     v.                             :     CIVIL NO. 3:CV-11-1995
                                    :
WARDEN BRYAN BLEDSOE, ET AL.,       :     (Judge Conaboy)
                                    :
          Defendants                :

_____

**MEMORANDUM**
**Background**

Doran Christian Carvalho (Plaintiff), an inmate presently confined at the United States Penitentiary, Lewisburg, Pennsylvania (USP-Lewisburg) initiated this civil action. Plaintiff is represented by counsel. Named as Defendants in the fourteen (14) count Complaint are the Federal Bureau of Prisons (BOP), USP-Lewisburg Warden Bryan Bledsoe, and three (3) John Doe prison officials.

The Complaint includes Bivens[1]-type civil rights claims, allegations under the Americans with Disabilities Act, and "pendent

_____

1. In Bivens, the Supreme Court held that a plaintiff may obtain damages for injuries caused by a federal agent acting "under color of his authority" in violation of a claimant's constitutionally protected rights. Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 395 (1971). Bivens stands for the proposition that a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal question jurisdiction of the district court to obtain an award of monetary damages.

1

state claims."[2]  Doc. 1, ¶ 1.  According to the Complaint, Plaintiff arrived at USP-Lewisburg on or about October 4, 2010. Carvalho states that his first assigned cellmate was Franklin Stokes, a prisoner with a history of assaulting fellow inmates. See Doc. 1, ¶ 25.

It is initially alleged that on November 26, 2010 Plaintiff was attacked without provocation by Inmate Stokes.  At the time of the attack, Carvalho was allegedly in handcuffs which prevented him from being able to defend himself.  The Complaint asserts that unidentified correctional officers who witnessed the attack failed to intervene.  As a result of their failure, Plaintiff suffered additional injuries.[3]  Following this incident, Carvalho was transferred to a private cell where he purportedly began to develop noticeable signs of post traumatic stress.

On December 11, 2010, Plaintiff was assigned to share a cell with Donald Taylor.  Inmate Taylor is described as having "an unusually marked disposition to gross physical assaults."  Id. at ¶ 30.  It is specifically alleged that Taylor had previously attacked one or more USP-Lewisburg prisoners by biting or tearing off parts of his victims' ears or otherwise seriously wounding them.  Inmate Taylor is further described as being of a "psychopathic and dangerous nature" who posed a direct threat to staff and prisoners alike.  Id. at ¶ 35.

---

2.  This Court's November 3, 2011 Order remarked that it was unclear as to whether Plaintiff was pursing claims under the Federal Tort Claims Act (FTCA).

3.  The injuries are not described and there is no indication as to why Carvalho was in handcuffs.

The Complaint states that on December 11, 2010 Taylor suddenly attacked Plaintiff without warning or provocation by striking him in the head and slamming his head into a metal tray. During the attack Plaintiff asserts that he passed in and out of consciousness. It is alleged that despite pleas from other prisoners and Carvalho himself, prison staff failed to intervene. As the attack continued, Taylor bit off and swallowed the upper portions of Plaintiff's ears and repeatedly slashed him with a razor blade. Plaintiff also suffered a broken nose (in four places); facial lacerations requiring fifteen stitches; a shattered left eye socket and cheekbone. See id. at ¶ 48. Additionally, Carvalho claims that his post traumatic and emotional distress were aggravated by this latest attack.

Plaintiff next alleges that during the relevant time period USP-Lewisburg had an unconstitutional "settled policy" (a/k/a the "f-king or fighting rule") of not intervening in physical confrontations between prisoners until actual physical violence or overt sexual assault were taking place. Id. at ¶ 49-50. Moreover, Carvalho contends that he was unable to signal for help due to an absence of adequate warning or other safety devices in his cell and because the staff at USP-Lewisburg were not adequately trained, supervised or regulated.

It is also asserted that following the incident Plaintiff was transferred to the Geisinger Medical Center which is an outside contract medical service provider for the BOP. However, Carvalho maintains that he was only afforded "palliative care" and "temporary remedial treatment" for his severe and disfiguring

3

injuries.  Id. at ¶ 91. Plaintiff further contends that he has not been provided with adequate dental and psychological care as well as treatment and therapy for his pre-existing scoliosis.

The Complaint next seeks relief on the basis that prison officials punish inmates such as Carvalho who make complaints by placing such prisoners in hazardous cohabitation or close proximity with known violent prisoners.  In addition, Plaintiff describes USP-Lewisburg (a/k/a gladiator school or academy) as having a reputation for substantial gang related activity.  This purported gang related activity and violence is allegedly indirectly and implicitly encouraged by prison staff.

Plaintiff additionally contends that he was placed in direct physical restraints for prolonged periods of time for pursuing administrative grievances.  See id. at ¶ 67. It is also alleged that prison officials have impeded Plaintiff's ability to seek administrative relief by withholding forms, interfered with his right to obtain good time credits, threatened him with reprisals and provided him with misinformation with respect to the administrative grievance system; and interfered with his ability to contact his legal counsel.

In conclusion, the Complaint argues that the above described conduct violated Carvahlo's constitutional rights; constituted negligent medical[4], dental, and psychological care; and violated the Americans with Disabilities Act (ADA) with respect to Carvalho's scoliosis.  Plaintiff also raises pendent state law

---

4.  Plaintiff also contends that the deficient security and medical care by Defendants constituted malpractice.  See id. at ¶ 132.

claims of intentional infliction of emotional distress, negligent infliction of emotional distress as well as assault and battery. His Complaint also indicates that Carvalho may be seeking relief under the FTCA. As relief, the Complaint seeks compensatory and punitive damages as well as injunctive relief and attorney's fees.

Defendants have responded to the Complaint by filing a motion to dismiss and for summary judgment. See Doc. 13. The opposed motion is ripe for consideration.[5]

## Discussion

### Motion to Dismiss

Defendants' pending dispositive motion is supported by evidentiary materials outside the pleadings. Federal Rule of Civil Procedure 12(d) provides in part as follows:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleading are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(b)(d).

This Court will not exclude the evidentiary materials accompanying the Defendants' motion. Thus, their motion will be treated as solely seeking summary judgment. See Latham v. United

---

5. On September 7, 2012, Inmate Carvalho made a pro se submission to the Court which included copies of a portion of his institutional medical records. See Doc. 45. Defendants have filed a motion to strike Carvalho's filing as being redundant, immaterial and improperly submitted.

Although the motion to strike (Doc. 46) sets forth a valid argument, it will be denied in the interests of justice and the prisoner's filing will be accepted.

States, 306 Fed. Appx. 716, 718 (3d Cir. 2009)(when a motion to dismiss has been framed alternatively as a motion for summary judgment such as in the present case, the alternative filing "is sufficient to place the parties on notice that summary judgment might be entered.")

**Summary Judgment**

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); See also Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir. 2001). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. Id. at 248. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. Saldana, 260 F.3d at 232; see also Reeder v. Sybron Transition Corp., 142 F.R.D. 607, 609 (M.D. Pa. 1992). Unsubstantiated arguments made in briefs are not considered evidence of asserted facts. Versarge v. Township of Clinton, 984 F.2d 1359, 1370 (3d Cir. 1993).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint. See Celotex Corp. v. Catrett, 477 U.S. 317, 324

(1986).  Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  Id. (internal quotations omitted); see also Saldana, 260 F.3d at 232 (citations omitted).  Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial."  Celotex, 477 U.S. at 322-23.  "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'"  Saldana, 260 F.3d at 232 (quoting Williams v. Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989)).

**FTCA**

Count Four of the Complaint asserts a claim of general negligence.  In Count Six, Plaintiff asserts that Defendants' alleged failure to provide him with adequate security and medical care constituted malpractice.  It appears that those two counts are seeking relief pursuant to the FTCA.[6]

The FTCA provides a remedy in damages for the simple negligence of employees of the United States.  See United States v. Muniz, 374 U.S. 150, 150 (1963).  Under the FTCA, sovereign immunity is waived against persons suing the federal government for the commission of various torts.  See Simon v. United States, 341

_____

6.  It is noted that those Counts are not included in the section of the Complaint labeled "Pendent State Claims."  Doc. 1, p. 36.

7

F. 3d 193, 200 (3d Cir. 2003).  A plaintiff pursuing an FTCA claim

must show:  (1) that a duty was owed to him by a defendant; (2) a

negligent breach of said duty; and (3) that the negligent breach

was the proximate cause of the plaintiff's injury/loss.  <u>Mahler v.

United States</u>, 196 F. Supp. 362, 364 (W.D. Pa. 1961).  The only

proper Defendant for purposes of an FTCA claim is the United States

of America.[7]  <u>See</u> 28 U.S.C. § 2679(d).

Based upon this Court's initial review of the pending

Complaint, our November 3, 2011 Order noted that it was unclear

whether Plaintiff was pursuing an FTCA claim.  <u>See</u> Doc. 5, p. 1, n.

1.  Defendants pending motion asserts that Plaintiff cannot

presently pursue an FTCA because he failed to exhaust an

administrative tort claim.  <u>See</u> Doc. 20, p. 38.  Alternatively,

they argue that entry of summary judgment is also appropriate with

respect to any FTCA medical malpractice claim because Plaintiff has

not filed a certificate of merit.  <u>See</u> <u>id</u>. at p. 40.

Plaintiff states "that a claim has not previously nor as yet

been filed " under the FTCA."  Doc. 34, p. 28.  Accordingly, given

Carvalho's admission that he is not presently pursuing an FTCA

claim, the negligence based portion of the Complaint (Counts Four

and Six) will be deemed withdrawn.

**ADA**

Count Seven of the Complaint seeks relief under the ADA on

the basis that Plaintiff was denied adequate care and

accommodations for his scoliosis and post traumatic stress

---

7.  The United States has not been named as a Defendant in this
matter.

8

disorder.  See Doc. 1, ¶ 133-143.  Defendants assert that the Complaint "does not allege any facts that might support a claim under any section of the ADA."  Doc. 20, p. 47.

Neither Plaintiff's opposing brief (Doc. 34) nor his supplemental opposing brief (Doc. 43) address Defendants' contention that a viable ADA claim has not been set forth in the Complaint.  Accordingly, this summary judgment argument will be deemed unopposed

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity."  42 U.S.C. § 12132.[8]  The ADA seeks "to assure even handed treatment and the opportunity for [disabled] individuals to participate in and benefit from programs [receiving financial assistance]. Southeastern Community College v. Davis, 442 U.S. 397 (1979).[9] .  P.C. v. McLaughlin, 913 F.2d 1033, 1041 (2d Cir. 1990).

---

8.    The regulations implementing the ADA define a "qualified individual with a disability" as:
> "An individual with a disability who, with
> or without reasonable modifications to
> rules, policies or practices, . . . meets
> the essential eligibility requirements for
> the . . . participation in programs or
> activities provided by a public entity."

28 C.F.R. § 35.104 (1993).

9.    The "evenhanded treatment" requirement does not, however, impose an affirmative obligation on public entities to expand existing programs but only that disabled individuals receive the same treatment as those who are not disabled.

It has been recognized that the provisions of the ADA are applicable to prisoners confined in state correctional institutions. <u>See</u> <u>Pa. Dept. of Corrections v. Yeskey</u>, 524 U.S. 206 (1998). However, absent an explicit waiver of sovereign immunity, the United States is generally immune from suit.[10] <u>United States v. Mitchell</u>, 445 U.S. 535, 538 (1980). This "immunity is jurisdictional in nature," <u>FDIC v. Meyer</u>, 510 U.S. 471, 475 (1994), and extends to government agencies and employees. <u>Antol v. Perry</u>, 82 F.3d 1291, 1296 (3d Cir. 1996).

Federal detention centers are not protected by the ADA. <u>Hurtado v. Reno</u>, 34 F. Supp.2d 1261,1264 (D. Col 1999). The ADA does not contain a waiver of sovereign immunity and thus, does not apply to the federal government. <u>Crowder v. True</u>, 845 F. Supp. 1250 (N.D. Ill 1994). Consequently, Defendants are entitled to entry of summary judgment with respect to the ADA portion of the Complaint (Count Seven).

**Good Time Credits**

Count Eleven of the Complaint claims entitlement to relief on the grounds that Defendants interfered with Plaintiff's ability to earn good time credit by issuing him disciplinary reports ("shots"). <u>See</u> Doc. 1, ¶¶ 165-169. Defendants contend that said claim is not properly asserted in a civil rights complaint. Rather, they maintain any claims relating to deprivation of good time credits must be pursued via a federal habeas corpus petition.

---

10.    "Congress has not waived sovereign immunity for damages claims for constitutional violations." <u>Germosen v. Reno</u>, Civil No. 99-1268, slip op. at 13 (M.D. Pa. Sept. 20, 2000)(Vanaskie, C.J.).

See Doc. 20, pp. 45-47.  This argument has not been addressed by Plaintiff's opposing brief or his supplemental opposing brief. Accordingly, it will be deemed unopposed.

Federal inmates challenging the duration of their confinement or seeking earlier or speedier release must assert such claims in a properly filed habeas corpus action under 28 U.S.. § 2241.  Preiser v. Rodriquez, 411 U.S. 475 (1975), Telford v. Hepting, 980 F.2d 745, 748 (3d Cir.), cert. denied 510 U.S. 920 (1993).  Habeas corpus review under § 2241 "allows a federal prisoner to challenge the 'execution' of his sentence."  Woodall v. Federal Bureau of Prisons, 432 F.3d 235, 241 (3d Cir. 2005). Review is available "where the deprivation of rights is such that it necessarily impacts the fact or length of detention."  Leamer v. Fauver, 288 F.3d 532, 540 (3d Cir. 2002).

The United States Supreme Court in Wolff v. McDonnell, 418 U.S. 539, 563-73 (1974), held that a prisoner deprived of good time credits as a sanction for misconduct is entitled to certain due process protections in a prison disciplinary proceeding.  Wolff noted that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply." Id. at 556.  Nonetheless, the Supreme Court held that a prisoner facing a loss of good time credits is entitled to some procedural protection.  Id. at 563-71.

A subsequent Supreme Court decision, Sandin v. Conner, 515 U.S. 472, 480-84 (1995), reiterated that the due process safeguards set forth in Wolff must be provided when the challenged disciplinary proceeding results in a loss of good time credits.

11

See also Young v. Kann, 926 F.2d 1396, 1399 (3d Cir. 1991) (a federal prisoner has a constitutionally protected liberty interest in good time credit); Griffin v. Spratt, 969 F.2d 16, 19 (3d Cir. 1992).

Carvalho's Complaint partially asserts that he was deprived of good time credits which has adversely affected the duration of his ongoing federal confinement. Since those claims, if proven, would affect the duration of Plaintiff's confinement, they must be raised via a properly filed habeas corpus petition. Summary judgment will be granted with respect to Count Eleven of the Complaint.

**Administrative Exhaustion**

Plaintiff's remaining federal claims assert multiple violations of his constitutional rights including: failure to protect his safety (Count One); Failure to provide warning devices and other security/safety measures (Count Two); lack of appropriate medical care (Count Three); failure to train, regulate or supervise prison staff (Count Five); unlawful use of restraints (Count Eight); interference with his right to counsel (Count Nine);and denial of due process (Count Ten).

Defendants "concede that Plaintiff has properly exhausted his claims for dental care, denial of access to the courts regarding a piece of opened legal mail, a July 15, 2011 Disciplinary Hearing Officer action and a reduction in good time credits."[11]  Doc. 20, p. 17.

_____

11.  This Court has already concluded that any good conduct time
(continued...)

12

However, they contend that Plaintiff failed to exhaust his administrative remedies prior to filing this suit regarding the allegations of deliberate indifference to his safety; excessive force in the application of restraints; an unconstitutional prison fighting policy; deliberate indifference to his medical needs involving the attack by his cell mate Taylor, the purported failure of the BOP to properly train, regulate and supervise the prison staff; denial of access to his legal counsel; and interference with the administrative remedy procedure. See id.

Section 1997e(a) of title 42 U.S.C. provides:

> No action shall be brought with respect to prison conditions under Section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Section 1997e(a) requires administrative exhaustion "irrespective of the forms of relief sought and offered through administrative avenues." Porter v. Nussle, 122 S.Ct. 983, 992 (2002); Booth v. Churner, 532 U.S. 731, 741 n. 6 (2001). Claims for monetary relief are not excused from the exhaustion requirement. Nyhuis v. Reno, 204 F.3d 65, 74 (3d Cir. 2000). Dismissal of an inmate's claim is appropriate when a prisoner has failed to exhaust his available administrative remedies before bringing a civil rights action. Ahmed v. Sromovski, 103 F. Supp. 2d 838, 843 (E.D. Pa. 2000). "[E]xhaustion must occur prior to

_____

11. (...continued)
related claims must be pursued in a federal habeas corpus action.

filing suit, not while the suit is pending." <u>Tribe v. Harvey</u>, 248 F.3d 1152, 2000 WL 167468, *2 (6th Cir. 2000)(citing <u>Freeman v. Francis</u>, 196 F.3d 641, 645 (6th Cir. 1999)); <u>Oriakhi v. United States</u>, 165 Fed. Appx. 991, 993 (3d Cir. 2006).

The United States Supreme Court in <u>Jones v. Bock</u>, 127 S.Ct. 910, 923 (2007), stated that the primary purpose of the exhaustion requirement is to allow "a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." <u>Id</u>. The administrative exhaustion mandate also implies a procedural default component. <u>Spruill v. Gillis</u> 372 F.3d 218, 222 (3d Cir. 2004).

As explained by the Third Circuit Court of Appeals, a procedural default rule "prevents an end-run around the exhaustion requirement." <u>Id</u>. at 230. It also ensures "prisoner compliance with the specific requirements of the grievance system" and encourages inmates to pursue their administrative grievances "to the fullest." <u>Id</u>. Similarly, the Supreme Court has observed that proper exhaustion of available administrative remedies is mandatory, meaning that prisoners must comply with the grievance system's procedural rules, including time limitations. <u>Woodford v. Ngo</u>, 548 U.S. 81 (2006).

The BOP has a well established three (3) step Administrative Remedy Program whereby a federal prisoner may seek review of any aspect of his imprisonment. <u>See</u> 28 C.F.R. §§ 542.10-542.19. After attempting to informally resolve the issue, a BOP

inmate can initiate the first step of the grievance process by submitting "a formal written Administrative Remedy Request, on the appropriate form (BP-9)," within twenty (20) calendar days "following the date on which the basis for the Request occurred." See 28 C.F.R. § 542.14(a). The Warden has twenty (20) calendar days from the date the Request or Appeal is filed in which to respond." See 28 C.F.R. § 542.18. If not satisfied with the Warden's response, an inmate may appeal (step two) on the appropriate form (BP-10) to the Regional Director within twenty (20) calendar days of the date the Warden signed the response. See 28 C.F.R. § 542.15. Finally, if the inmate is dissatisfied with the Regional Director's response, that decision may then be appealed (step three) on the appropriate form (BP-11) to the General Counsel within thirty (30) calendar days from the date the Regional Director signed the response. Id. Additionally, "[i]f the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." Id.

The Court of Appeals for the Third Circuit has recognized that "[t]here is no futility exception" to the exhaustion requirement. Brown v. Croak, 312 F.3d 109, 112 (3d cir. 2002) (citing Nyhuis, 204 F.3d at 75. A more recent decision by the Third Circuit Court of Appeals reiterated its no futility exception by rejecting an inmate's argument that exhaustion should be excused because prisoner grievances were regularly rejected. Hill v. Smith, 186 Fed. Appx. 271, 274 (3d Cir. 2006).

15

An inmate is not required to specifically plead or demonstrate exhaustion in his or her complaint. See Jones v. Bock, 549 U.S. 199, 216 (2007); see also Ray v. Kertes, 285 F.3d 287 (3d Cir. 2002)(a prisoner does not have to allege in his complaint that he has exhausted administrative remedies). Rather, pursuant to the standards announced in Williams v. Runyon, 130 F.3d 568, 573 (3d Cir. 1997), it is the burden of a defendant asserting the defense of non-exhaustion to plead and prove it.[12] Consequently, any failure by Plaintiff to allege or establish compliance with the exhaustion requirement is not by itself a sufficient basis for entry of dismissal under the criteria established in Jones and Williams.

In support of their non-exhaustion argument, Defendants have submitted a declaration under penalty of perjury by USP-Lewisburg Supervisory Attorney L. Cunningham who states that a review of the BOP's computerized records systems reveals that Plaintiff initiated 65 grievances regarding his USP-Lewisburg confinement. See Doc. 19-1, ¶ 6. Nineteen (19) of those grievances, including complaints that his teeth needed to be cleaned; his legal mail was improperly opened; and a challenge to a July 15, 2011 disciplinary proceeding were fully exhausted.

Cunningham notes that several other grievances initiated by Plaintiff were rejected at the national level for procedural reasons. See id. at ¶ 10. It is also acknowledged that Carvalho

_____

12. In Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003), the United States Court of Appeals for the Third Circuit similarly stated that "[f]ailure to exhaust administrative remedies is an affirmative defense for the defendant to plead."

attempted to file several "sensitive issue" grievances at the regional level (bypassing the institutional level) which were not accepted.

Plaintiff's opposing brief indicates that he filed several administrative grievances regarding the root issue in this case, i.e., the December 11, 2010 assault by Inmate Taylor and its aftermath. It is asserted that USP-Lewisburg officials have impeded Plaintiff's ability to exhaust those grievances by denying him copies of his administrative filings, access to copying facilities, and information regarding the exhaustion process. See Doc. 21, pp. 18-19. Plaintiff adds that since Defendants acknowledge that they have failed to file timely responses to some of his grievance appeals, only a reasonable compliance standard should be applied in his case. See id. at p. 21. Moreover, since Carvalho attempted to substantially follow what he believed to be accepted practices with respect to his grievance appeals, exhaustion should be excused.

The Plaintiff's opposing brief additionally argues that due to the medical problems he suffered as a result of the two inmate attacks, he was "grossly impaired" in his pursuit of administrative remedies. Id. at p. 26.

It is initially noted that the failure to exhaust argument primarily centers on those claims directly relating to the core issue of this matter, namely the brutal assault suffered by Plaintiff at the hands of Inmate Taylor. The undisputed record

establishes that Plaintiff filed numerous grievances regarding the alleged claims pending before this Court. Cunningham's declaration acknowledges that Defendants concede exhaustion with respect to some of Plaintiff's pending claims because the BOP failed to respond to the inmate's grievances within the allotted time frame. They further indicate that exhaustion was not completed because some grievances were rejected for procedural reasons at the final level of the administrative review.[13]

Based upon the above factors, there are clearly material facts in dispute as to whether Plaintiff should be excused from the exhaustion requirement with respects to the allegations of deliberate indifference to Carvalho's safety, excessive force in the application of restraints and the alleged fighting policy; deliberate indifference to his medical needs involving the attack by his cell mate, the purported failure of the BOP to properly train, regulate and supervise the prison staff, denial of access to his legal counsel and interference with the administrative remedy procedure. Therefore, the request by Defendants for entry of summary judgment on the basis of non-exhaustion of administrative remedies will be denied.

**BOP**

Defendants argue that the BOP is not a properly named

---

13. It is apparent that both the prisoner and the BOP had procedural failures.

defendant with respect to the <u>Bivens</u> portion of the Complaint.  <u>See</u>
Doc. 20, p. 49.

It is well settled that the United States and other
governmental entities are not persons and therefore not proper
defendants in a federal civil rights action.  <u>Accardi v. United
States</u>, 435 F. 2d 1239, 1241 (3d Cir. 1970); <u>see</u> <u>also</u> <u>Hindes v.
F.D.I.C.</u>, 137 F.3d 148, 159 (3d Cir. 1998); <u>Figueroa-Garay v.
Muncipality of Rio Grande</u>, 364 F. Supp.2d 117, 128 (D. P. R.
2005).

In <u>Hindes</u>, <u>supra</u>, the Court of Appeals for the Third Circuit
held that a federal agency is not a "person" subject to § 1983
liability, whether or not it is in an alleged conspiracy with state
actors.  <u>Hindes</u>, 137 F.3d at 158.  Similarly, in <u>Shannon v. U.S.
Parole Commission</u>, 1998 WL 557584 *3 (S.D.N.Y. Sept. 2, 1998), the
district court stated that "<u>Bivens</u> claims may not be maintained
against federal agencies."  <u>See also</u> <u>Duarte v. Bureau of Prisons</u>,
1995 WL 708427 *2 (D. Kan. Nov. 3, 1995)(the BOP "is not a proper
defendant in a <u>Bivens</u> action.").  Based on an application of the
above standards, the BOP is not properly named defendant and
therefore entitled to summary judgment with respect to the <u>Bivens</u>
portion of Plaintiff's action.

**Respondeat Superior**

Count Nine of the Complaint raises two claims of denial of
access to the courts.  First, it is asserted that the Plaintiff's
legal mail was improperly delayed and or opened outside of his

presence.  See Doc. 1 ¶ 152.  Second, it is alleged that Defendants interfered with Carvalho's right to receive attorney visits.  See id. at ¶ 153.

Defendants maintain that there are no allegations that Warden Bledsoe had any personal involvement in the alleged improper opening of Plaintiff's legal mail or the purported interference in his inmate legal visits.  See Doc. 20, p. 29.  Moreover, any attempt by Plaintiff to establish liability against the Warden solely based upon his supervisory capacity must fail.

A plaintiff, in order to state an actionable civil rights claim, must plead two essential elements: (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States.  Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

Civil rights claims brought cannot be premised on a theory of respondeat superior.  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim.  See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976).  As explained in Rode:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . .

20

> . [P]ersonal involvement can be shown through
> allegations of personal direction or of actual
> knowledge and acquiescence. Allegations of
> participation or actual knowledge and
> acquiescence, however, must be made with
> appropriate particularity.

Rode, 845 F.2d at 1207.

Warden Bledsoe is clearly employed in a supervisory capacity by the BOP. Second, there are no allegations that Bledsoe handled, inspected or delivered any mail to Carvalho. Likewise there is no allegation that he was personally involved in any denial or interference with the inmate's legal visits. Likewise there are no factual assertions set forth in the Complaint which could establish that Defendant Bledsoe directed or acquiesced in either the alleged improper opening of the prisoner's mail or any purported obstruction of his right to have legal visits. Based upon the standards announced in Rode, Bledsoe is clearly entitled to entry of summary judgment since it is apparent Plaintiff is attempting to establish liability against him solely on the basis of his supervisory capacity within the BOP.

It is also possible that Plaintiff may be attempting to establish liability against Bledsoe due to his responses or non-response to access to the court related administrative grievances or complaints  Prisoners have no constitutionally protected right to a grievance procedure. See Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 137-38 (1977)(Burger, C.J., concurring) ("I do not suggest that the [grievance] procedures are

21

constitutionally mandated."); <u>Speight v. Sims</u>, No. 08-2038, 2008 WL 2600723 at *1 (3d. Cir. Jun 30, 2008)(citing <u>Massey v. Helman</u>, 259 F.3d 641, 647 (7th Cir. 2001)("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner.")

While prisoners do have a constitutional right to seek redress of their grievances from the government, that right is the right of access to the courts which is not compromised by the failure of prison officials to address an inmate's grievance. <u>See</u> <u>Flick v. Alba</u>, 932 F.2d 728, 729 (8th Cir. 1991) (federal grievance regulations providing for administrative remedy procedure do not create liberty interest in access to that procedure). Pursuant to those decisions, any attempt by Plaintiff to establish liability against Defendants based upon their handling of his administrative grievances or complaints does not support a constitutional claim. <u>See</u> <u>also</u> <u>Alexander v. Gennarini</u>, 144 Fed. Appx. 924, 925 (3d Cir. 2005)(involvement in post-incident grievance process not a basis for § 1983 liability); <u>Pryor-El v. Kelly</u>, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable).[14]

---

14. Since Plaintiff enjoys no constitutional right to a grievance procedure, entry of summary judgment with respect to Count Ten of the Complaint (denial of due process) is also appropriate.
    Additionally, there is no indication that Plaintiff has satisfied his burden of alleging that he suffered any injury to a non-frivolous litigation effort as required under <u>Lewis v. Casey</u>, 518 U.S. 343, 351-54 (1996).

Accordingly, summary judgment will be entered in favor of Warden Bledsoe with respect to the claims of denial of access to the courts.

**Dental Care**

Plaintiff generally contends that he suffers from dental cavities, receding gums, and gum disease for which he has not been provided with adequate care.[15] <u>See</u> Doc. 1, ¶ 98. Defendants argue that the undisputed record establishes that Plaintiff was provided with adequate dental care. <u>See</u> Doc. 20, p. 32. Consequently, they seek summary judgment with respect to said claim.

The Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." <u>Rouse v. Plantier</u>, 182 F.3d 192, 197 (3d Cir. 1999) (citing <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976)). In order to establish an Eighth Amendment medical claim, an inmate must allege acts or omissions by prison officials sufficiently harmful to evidence deliberate indifference to a serious medical need. <u>See</u> <u>Spruill v. Gillis</u>, 372 F.3d 218, 235-36 (3d Cir. 2004); <u>Natale v. Camden Cty. Correctional Facility</u>, 318 F.3d 575, 582 (3d Cir. 2003). In the context of medical care, the relevant inquiry is whether the defendant was: (1) deliberately indifferent (the subjective component) to (2) the plaintiff's serious medical needs (the objective component). <u>Monmouth Cty. Corr. Inst. Inmates v. Lanzaro</u>, 834 F.2d 326, 346 (3d

---

15. Subsequent submissions by Plaintiff indicate that he was denied a previously prescribed bite guard. <u>See</u> Doc. 34-1, p. 173. However, no such claim is asserted in the Complaint.

Cir. 1987); West v. Keve, 571 F.2d 158, 161 (3d Cir. 1979). Dental care has been recognized an important medical need of inmates. Petrazzoulo v. United States Marshals Service, 999 F. Supp 401, 407 (W.D.N.Y. 1998)

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Mines v. Levi, 2009 WL 839011 *7 (E.D. Pa. March 26, 2009)(quoting Colburn, 946 F.2d at 1023); Monmouth Cty. Corr. Inst. Inmates, 834 F.2d at 347. "[I]f unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the Eighth Amendment." Young v. Kazmerski, 266 Fed. Appx. 191, 193 (3d Cir. 2008)(quoting Monmouth Cty. Corr. Inst. Inmates, 834 F.2d at 347).

A serious medical need may include a need for dental care. However, periodontitis causing intermittent pain has been found not to be a serious medical need. Jenkins v. Clark, No. C94-3961, 1995 U.S. Dist. LEXIS 11122 (N.D. Cal. July 31, 1995).

According to undisputed medical records submitted by Defendants, the Plaintiff had a dental examination which included the cleaning of his teeth and counseling as to proper oral hygiene on November 9, 2011. The exam resulted in a determination that Plaintiff had "great oral hygiene." Doc. 19-1, p. 41. It was also

noted that he did not have bleeding gums, toothache, decayed or loose teeth.

Plaintiff has not presented this Court with any evidence which could establish that he suffered any dental problem which would satisfy the serious medical need requirement. Based upon the undisputed institutional records that Plaintiff did not have any significant dental problems, he has failed to satisfy the Estelle serious medical need threshold.

With respect to the subjective deliberate indifference component, the Supreme Court has established that the proper analysis for deliberate indifference is whether a prison official "acted or failed to act despite his knowledge of a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 841 (1994). A complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment [as] medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106.

When a prisoner has actually been provided with medical treatment, one cannot always conclude that, if such treatment was inadequate, it was no more than mere negligence. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993). It is true, however, that if inadequate treatment results simply from an error in medical judgment, there is no constitutional violation. See id.

However, where a failure or delay in providing prescribed treatment is deliberate and motivated by non-medical factors, a constitutional claim may be presented.  See id.; Ordonez v. Yost, 289 Fed. Appx. 553, 555 (3d Cir. 2008)("deliberate indifference is proven if necessary medical treatment is delayed for non-medical reasons.").

Defendants have submitted undisputed institutional medical records which show that Carvalho requested a dental examination on April 4, 2011.  Those records further provide that although Plaintiff's request was granted, the prisoner was informed that there was a waiting list for dental treatment that spanned 14-16 months.  On November 9, 2011, shortly after the initiation of this matter and approximately seven (7) months after the submission of his request for treatment, Carvalho underwent a dental examination which revealed that he had no need for further treatment.

Based upon those undisputed facts, Plaintiff has also failed to satisfy the deliberate indifference requirement of Estelle. Accordingly, since Plaintiff has neither demonstrated that he had a serious dental need or that the prison's health care staff was deliberately indifferent to a need for treatment, entry of summary judgment in favor of Defendants is appropriate with respect to the claim of deliberate indifference to Plaintiff's dental needs.[16]

---

16.  Any claim as to the quality of the dental examination performed would sound in negligence and therefore not properly asserted in a Bivens action.  Moreover, there is no assertion that any Defendant had any personal involvement in Plaintiff's dental care.

**John Does**

Defendants' next argument states that the John Doe Defendants named in the Complaint should be dismissed for lack of personal jurisdiction. See Doc. 20, p. 24.

John Doe defendants may only be allowed "to stand in for the alleged real parties until discovery permits the intended defendants to be installed." Johnson v. City of Erie, 834 F. Supp. 873, 878 (W.D. Pa. 1993) (citations omitted). Absent compelling reasons, a district court may dismiss such defendants if a plaintiff, after being granted a reasonable period of discovery, fails to identify them. Scheetz v. Morning Call, Inc., 130 F.R.D. 34, 37 (E.D. Pa. 1990) ("Fictitious parties must eventually be dismissed, if discovery yields no identities.").

Although this action was filed almost one (1) year ago, Plaintiff has failed to provide this Court with the identities of any of the multiple John Doe Defendants listed in the Complaint.

Thus, this Court has significant concerns about the prolonged failure of Plaintiff to identify any of the John Doe Defendants. However, despite such concerns, and in the interests of justice, this request for summary judgment will not be granted at this time.

With respect to those pending Bivens claims which are being allowed to proceed, Plaintiff will be granted thirty (30) days from the date of this Memorandum and Order in which to file an amended complaint which properly provides the names of each of the John Doe

27

Defendants and sets forth the basis for those claims in a clear and concise manner.  In the event that Carvahlo fails to timely identify those Defendants, they shall be dismissed from this action under the authority of Scheetz.

**Qualified Immunity**

Defendants also assert that Warden Bledsoe is entitled to qualified immunity with respect to Plaintiff's claims under the Eighth Amendment.  See Doc. 20, p. 36.

Based upon this Court's prior conclusions, the only viable surviving claim asserted against Warden Bledsoe is the apparent contention that he enacted, or acquiesced in a prison policy which constituted a failure to protect Plaintiff's safety.

Qualified immunity is an affirmative defense which must be pleaded by the defendant official.  Verney v. Pennsylvania Turnpike Comm'n, 881 F. Supp. 145, 149 (M.D. Pa. 1995).  In Harlow v. Fitzgerald, 457 U.S. 800 (1982), the United States Supreme Court held "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Id. at 818; Sherwood v. Mulvihill, 113 F.3d 396, 398-99 (3d Cir. 1997); Showers v. Spangler, 957 F. Supp. 584, 589 (M.D. Pa. 1997).  It has also been held that "qualified immunity is coextensive for suits brought against state officials under 42 U.S.C. § 1983 (1982), and for suits brought directly under the

Constitution against federal officials." People of Three Mile Island v. Nuclear Regulatory Commissioners, 747 F.2d 139, 144 n.9 (3d Cir. 1984) (citing Butz v. Economou, 438 U.S. 478, 504 (1978)).

The United States Supreme Court in Saucier v. Katz, 533 U.S. 194 (2001), subsequently established a two part test for analyzing qualified immunity claims. See also Curley v. Klem, 298 F.3d 271 (3d Cir. 2002); Bennett v. Murphy, 274 F.3d 133 (3d Cir. 2002). The initial inquiry in a qualified immunity examination is whether "the facts taken in the light most favorable to the plaintiff show a constitutional violation." Bennett, 274 F.3d at 136. The second prong requires a determination as to whether the constitutional right at issue was clearly established. If so, then a court must inquire as to "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 201. A determination that the conduct violated a clearly established constitutional right precludes the granting of qualified immunity.

This Court agrees that there is clearly a question as to whether the Original Complaint adequately plead that Warden Bledsoe was personally involved in the development or implementation of a policy which constituted a failure to protect inmate safety.

However, since Plaintiff is being afforded an opportunity to submit an Amended Complaint which must sufficiently set forth his claims relating to the December 11, 2010 incident, this Court will withhold disposition of the qualified immunity argument at this

time.  This argument may be reasserted if a timely and proper amended complaint is submitted.

**Pendent State Law Claims**

The final three counts of the Complaint raise pendent stare law claims.  Specifically, Count Twelve asserts that Plaintiff was subjected to an intentional infliction of emotional distress.  See Doc. 1, ¶¶ 170-173.  In Count Thirteen, Carvalho claims that he was subjected to a negligent infliction of emotional distress.  See id. at ¶¶ 174-176.  Finally, Count Fourteen sets forth a claim of assault and battery.  See id. at ¶¶ 177-179.

Defendants argue that Count Twelve fails to allege the type of extreme or outrageous conduct necessary to establish an intentional infliction of emotional distress claim under Pennsylvania state law.  See Doc. 20, p. 44.  Regarding the assertion of negligent infliction of emotional distress, Defendants seek dismissal of said allegation on the basis that Carvalho has not adequately alleged that the underlying purported medical care caused him to he suffer any substantial physical harm.  See id. at p. 45.  Finally, in response to the Count Fourteen claim of assault and battery, it is argued that said claim should be dismissed because the alleged intentional tort by a federal law enforcement officer did not take place during the course of an arrest, search, or seizure.  See id. at p. 48.

With respect to Plaintiff's pendent state law claims, federal courts have jurisdiction over state claims which are

related to the federal claims and result from a common nucleus of operative facts.  See United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966); see also Aldinger v. Howard, 427 U.S. 1, 9 (1976).  A district court may decline to exercise supplemental jurisdiction over a claim when the court has dismissed all claims over which it has original jurisdiction.  See 28 U.S.C. § 1367(c)(3) (1997). Decisions regarding pendent jurisdiction should be premised on considerations of judicial economy, convenience and fairness to the litigants.  New Rock Asset Partners v. Preferred Entity Advancements, 101 F.3d 1492, 1505 (3d Cir. 1996)(citation omitted).

Once jurisdiction has been exercised over the state claim, elimination of the federal claim does not deprive the court of jurisdiction to adjudicate the pendent claim.  Id. (citing Lentino v. Fringe Emp. Plans, Inc., 611 F. 2d 474, 479 (3d Cir. 1979)). However, when the federal claim is dismissed prior to trial, a district court should decline to decide the pendent state claims, "unless considerations of judicial economy, convenience, and fairness provide an affirmative justification for doing so." Borough of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995).

As discussed above, Plaintiff has been directed to file an clear and concise amended complaint solely regarding his surviving federal claims and which properly identifies all John Doe Defendants.  Based upon that determination, a decision by this Court as to whether to accept jurisdiction with respect to

31

Carvalho's pendent state law claims will be deferred pending submission of a proper amended complaint.  If appropriate, the pending requests for dismissal of the state law claims may be reasserted by Defendants following the filing of an Amended Complaint.  An appropriate Order will enter.


<u>S/Richard P. Conaboy</u>
RICHARD P. CONABOY
United States District Judge


DATED: SEPTEMBER 26, 2012