# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DORIAN CHRISTIAN CARVALHO** | : | |
| Plaintiff | : | CIVIL ACTION NO. 3:11-1995 |
| v. | : | (JUDGE MANNION) |
| **WARDEN BRYAN BLEDSOE, et al.,** | : | |
| | : | |
| Defendant | : | |
| | : | |

## **MEMORANDUM**

Before the court is a motion *in limine* filed by Dorian Christian Carvalho pursuant to Fed.R.Evid. 403 and 609, (Doc. 189), and a motion *in limine* filed by defendant Warden Bryan Bledsoe pursuant to Fed.R.Evid. 402 and 403, (Doc. 191).[1]

## I.   LEGAL STANDARD

"The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted

---

[1] The facts and procedural history of this case were set forth in the court's memorandum, dated August 13, 2019, (Doc. 180), and the court need not repeat it herein except to note that Bledsoe is the only remaining defendant in this case and the only remaining issue is whether Carvalho's Eighth Amendment rights were violated by the continued used of ambulatory restraints from February 16, 2011, to February 18, 2011, and August 19, 2011, to September 1, 2011.

evidence." *United States v. Tartaglione*, 228 F.Supp.3d 402, 406 (E.D.Pa. 2017). On a motion *in limine*, evidence should only be excluded "when the evidence is clearly inadmissible on all potential grounds." *Id.* Evidentiary rulings on motions *in limine* are subject to the trial judge's discretion and are therefore reviewed for an abuse of discretion. *Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1213 (3d Cir. 1995); *Bernardsville Bd. of Educ. v. J.H.*, 42 F.3d 149, 161 (3d Cir. 1994). "The Court is vested with broad inherent authority to manage its cases, which carries with it the discretion and authority to rule on motions *in limine* prior to trial." *Ridolfi v. State Farm Mutual Auto. Ins. Co.*, 2017 WL 3198006, *2 (M.D.Pa. July 27, 2017). Further, "[c]ourts may exercise this discretion in order to ensure that juries are not exposed to unfairly prejudicial, confusing or irrelevant evidence." *Id.* (citation omitted).

"A trial court considering a motion *in limine* may reserve judgment until trial in order to place the motion in the appropriate factual context." *United States v. Tartaglione*, 228 F.Supp.3d 402, 406 (E.D.Pa. 2017) (citation omitted). "Further, a trial court's ruling on a motion *in limine* is 'subject to change when the case unfolds, particularly if actual testimony differs from what was contained in the movant's proffer.'" *Id.* (citing *Luce v. United States*, 469 U.S. 38, 41 (1984)).

Pursuant to Fed.R.Evid. 403, the court may exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." The Third Circuit has cautioned that the exclusion of potentially relevant evidence pursuant to Rule 403 is an "extreme measure" at the pre-trial stage. *Hines v. Consol. Rail Corp.*, 926 F.2d 262, 274 (3d Cir. 1991). Evidence should rarely be excluded *in limine* pursuant to Rule 403 because "[a] court cannot fairly ascertain the potential relevance of evidence for Rule 403 purposes until it has a full record relevant to the putatively objectionable evidence." *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 859 (3d Cir. 1999).

Under Rule 404, character evidence is generally not admissible to prove conduct. In particular, "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Fed.R.Evid. 404(b). Other crimes, wrongs or acts are admissible, however, to prove motive, opportunity, intent, preparation, and plan. *Id.*

Finally, under Rule 609 governs the admissibility of a witness's prior convictions for impeachment purposes. Pursuant to Rule 609(a), for

purposes of attacking the character for truthfulness of a witness, evidence that the witness has been convicted of a felony "shall be admitted, subject to Rule 403 . . . if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused." Fed.R.Evid. 609(a)(1). In analyzing conviction evidence, the court must engage in a "genuine balancing" of probative value and prejudicial effect. *Tabron v. Grace*, 898 F.Supp. 293, 297 (M.D.Pa. 1995). Important considerations include "the nature of the convictions, the time that has elapsed since conviction, the importance of credibility to the underlying claim, and the potential for prejudice from admitting the convictions." *Id.* at 295.

A conviction over ten years old (measured from the date of conviction or release from confinement for the conviction, whichever is later), is generally not admissible "unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantial outweighs its prejudicial effect." Fed.R.Evid. 609(b). Thus, convictions over ten years old are only to be admitted in exceptional circumstances and the Rule 403 balancing is reversed. Whereas under Rule 403 unfair prejudice must substantially outweigh the evidence's probative value, for convictions over ten years old, the probative value of the conviction must substantially outweigh the prejudicial effect.

## II. DISCUSSION

### a. Carvalho's Motion *in Limine*

In his motion *in limine*, Carvalho asks that the court exclude any evidence of Carvalho's criminal convictions, sentence, or misconduct—specifically, his criminal convictions for felon in possession of a firearm, burglary, carjacking, robbery, larceny, indecent exposure, credit card fraud, and check fraud. Carvalho argues that his criminal history is irrelevant and should be excluded pursuant to Rules 402 and 403, since it does not pertain to Bledsoe's actions in restraining him, and because the risk of unfair prejudice would substantially outweigh any probative value of such evidence.

Relatedly, Carvalho argues that his criminal convictions are inadmissible for impeachment purposes under Fed.R.Evid. 609. As to his firearm conviction, Carvalho argues that the probative value of the conviction is minimal since the conviction is over fifteen years old and because his credibility is not a key factor in the case, since much of his testimony will be supported by documentary evidence. As to his other convictions, Carvalho argues that they, too, should be excluded for impeachment purposes because he completed his imprisonment for them over ten years ago and they are not probative of his credibility.

Although Carvalho acknowledges that his fraud conviction and potentially his larceny conviction are crimes of *crimen falsi*, he asserts that evidence of them should be excluded because the convictions are over ten years old and there are no facts or circumstances that would justify departure from the general presumption against use of convictions over ten years old. Carvalho's motion does not make any specific arguments as to why his prison misconduct should be excluded but he generally argues that such evidence is irrelevant and prejudicial.

In response, Bledsoe argues that Carvalho's motion should be denied to the extent that his disciplinary record and criminal convictions were relevant to, and informed the decision-making of, Bledsoe in deciding whether Carvalho should have remained in ambulatory restraints. More specifically, Bledsoe argues that his twenty-four- and forty-eight-hour restraint reviews were informed by Carvalho's designation as a Special Management Unit (SMU) inmate, his past criminal convictions and sentences, and his Bureau of Prisons (BOP) disciplinary history. Bledsoe asserts that, with Carvalho, he was dealing with a violent individual whom BOP officials had to approach with care and, given that the legality Bledsoe's actions are under review, Carvalho's criminal and disciplinary history is central to Bledsoe's defense.

Bledsoe cites this court's decision in *Shelton v. Bledsoe*, No. 11-cv-0368, 2017 WL 2906560 (M.D.Pa. July 7, 2017), wherein prison officials likewise argued that a plaintiff's disciplinary issues while incarcerated, and criminal convictions for conspiracy, bank robbery, armed bank robbery, and carrying a firearm during a crime of violence, helped to form the basis in assessing the threat level that the plaintiff presented in the context of an Eighth Amendment claim. There, the court agreed that "knowledge of such history would be relevant to the inquiry as to whether the force used against [the] plaintiff was reasonable under the circumstances." *Id.* at *5 (quoting *Smith v. City of Philadelphia*, No. 06-4312, 2009 WL 3353148, at *2 (E.D.Pa. Oct. 19, 2009)).

Here, Carvalho was sentenced to fifteen years' imprisonment on March 9, 2004, for a felon in possession of a firearm and ammunition conviction. Carvalho was committed to the BOP on April 22, 2004, and remained incarcerated until September 30, 2016. Rule 609(b) applies only "if more than 10 years have passed since the witness's conviction *or release from confinement for it, whichever is later.*" Fed.R.Evid. 609(b) (emphasis added). Accordingly, because Carvalho was only released from imprisonment in 2016 for the firearm conviction, it is not prohibited under Rule 609(b),

- 7 -

assuming it is relevant and its probative value is not substantially outweighed by its prejudicial effect.

As the court noted in *Shelton,* "The keystone to analysis of an Eighth Amendment excessive force claim entails issues of motivation—whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. Therefore, excessive force claims often turn on factual disputes which cannot be resolved as a matter of law." *Shelton*, 2017 WL 2906560, at *7 (internal citations omitted). There are several factual considerations that a jury must examine in determining whether a correctional officer has used excessive force in violation of the Eighth Amendment, including "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response." *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (internal quotation marks omitted).

The reasonableness of the use of force in any given instance is to be "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386,

396 (1989). Moreover, in the context of prison excessive force claims, in determining "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm," *Hudson v. McMillian*, 503 U.S. 1, 6 (1992), even if an inmate establishes that "prison officials over-reacted to the disturbance that he caused . . . , any such over-reaction would still fall short of supporting a finding that prison officials acted 'maliciously and sadistically to cause harm.'" *Fuentes v. Wagner*, 206 F.3d 335, 346 (3d Cir. 2000).

Given this fact-specific approach, which examines "the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them," *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000), an inmate's known propensity for violence would be pertinent to a determination of the quantum of force needed in a correctional setting to restore or maintain order. Thus, this evidence is relevant to the issues in this case, since "relevant evidence," is defined in Rule 401 as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401

In applying this to the present case, the court finds that if Bledsoe was aware of Carvalho's felony firearm conviction and his propensity for violence

while incarcerated, and if this information helped to form the basis of assessing the threat level that Carvalho presented, then "knowledge of such history would be relevant to the inquiry as to whether the force used against plaintiff was reasonable under the circumstances." *Smith v. City of Philadelphia*, No. 06-4312, 2009 WL 3353148, at *2 (E.D. Pa. Oct. 19, 2009); *see also Virgin Islands v. Carino*, 631 F.2d 226, 229 (3d Cir. 1980) ("If it can be established that the accused knew at the time of the alleged crime of prior violent acts by the victim, such evidence is relevant as tending to show a reasonable apprehension on the part of the accused.").

Therefore, in the present matter, the court finds that Carvalho's firearm conviction is relevant to the extent that Bledsoe knew of it and it informed, at least in part, the decision to continue use of the ambulatory restraints during the relevant time period. Therefore, the court will **DENY IN PART** Carvalho's motion *in limine*, (Doc. 189), with regard to evidence of his firearm conviction and will permit limited testimony on these matters. However, because Carvalho completed his sentences for the burglary, carjacking, larceny, indecent exposure, credit card fraud, and check fraud convictions prior to 2002, the court will **GRANT IN PART** Carvalho's motion *in limine*, (Doc. 189), with respect to that evidence, since the court finds that the probative value of these convictions does not substantially outweigh their prejudicial effect

and Bledsoe has not demonstrated the presence of "exceptional circumstances" necessary for such convictions to be admitted. *See* Advisory Committee Note to Fed.R.Evid. 609(b) ("Although convictions over ten years old generally do not have much probative value, there may be exceptional circumstances under which the conviction substantially bears on the credibility of the witness.").

With regard to Carvalho's disciplinary issues while incarcerated, the court finds that they are admissible for the same reasons as set forth above regarding his firearm conviction—namely, that this evidence is relevant to the inquiry of whether the force used against Carvalho was reasonable under the circumstances. Accordingly, the court will **DENY IN PART** Carvalho's motion *in limine*, (Doc. 189), in that testimony on this evidence will be permitted only insofar as Bledsoe was aware of the disciplinary issues and they informed his judgment on the quantum of force necessary in this case.

### b. Bledsoe's Motion *in Limine*

In his motion *in limine*, Bledsoe asks the court to preclude Carvalho from introducing evidence related to his dismissed claims—specifically, documentation of "brutal" assaults by his prior cellmate and the resulting "severe and disfiguring injuries"—because they are unduly prejudicial and

irrelevant to the only remaining claim, which pertains only to the continued used of restraints on Carvalho from February 16, 2011, to February 18, 2011, and August 19, 2011, to September 1, 2011. Bledsoe argues that it is *his* state mind, and not Carvalho's, that is at issue and there is no link between the cellmate assaults and the question of whether Bledsoe used force maliciously on the pertinent dates for the purpose of causing harm.

Carvalho, in response, argues that such evidence is relevant and necessary to accurately evaluate the factors relevant to the excessive force analysis, including the relationship between the need for, and the amount of, force, the extent of the threat to safety Carvalho posed, and any efforts made to temper the force used. Thus, Carvalho argues that it is necessary for the jury to know why he was refusing to accept a cellmate and was allegedly displaying a poor attitude.

Here, the court finds that evidence of Carvalho's cellmate assaults and his resulting gruesome injuries is irrelevant to the sole issue at trial and that the probative value of such information would be substantially outweighed by its prejudicial effect. Although the cellmate assaults may have been what motivated Carvalho to refuse additional cellmates, this is not a defense to Carvalho's subsequent behavior in refusing future cellmates and, moreover,

the cellmates who committed the assaults are not on trial here. Accordingly, the court will **GRANT** Bledsoe's motion *in limine* (Doc. 191).

### III.    CONCLUSION

For the above stated reasons, the court will **GRANT IN PART** and **DENY IN PART** Carvalho's motion *in limine*, (Doc. 189), and **GRANT** Bledsoe's motion *in limine*, (Doc. 191). An appropriate order will follow.

s/ *Malachy E. Mannion*

**MALACHY E. MANNION**
**United States District Judge**

**DATE: October 8, 2019**
11-1995-02